UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NAHLA EPHRAIM | : |
| | : |
| v. | :    C.A. No. 10-192S |
| | : |
| HARTFORD LIFE AND | : |
| ACCIDENT INSURANCE | : |
| COMPANY | : |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Plaintiff Nahla Ephraim ("Plaintiff") commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, challenging the denial of long-term disability ("LTD") benefits under a group policy issued to Plaintiff's former employer Wal-Mart Stores, Inc. by Defendant Hartford Life and Accident Insurance Company ("Hartford"). (Document No. 1). Hartford has moved for the entry of summary judgment under Fed. R. Civ. P. 56. (Document No. 18). Plaintiff opposes the Motion. (Document No. 25).

Hartford's Motion for Summary Judgment has been referred to me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72) and a hearing was held on October 18, 2011. For the reasons set forth herein, I recommend that Hartford's Motion for Summary Judgment be GRANTED.

**Facts**

The following facts come from Hartford's Local Rule 56(a)(2) Statement of Undisputed Facts. (Document No. 20). Plaintiff's attorney indicates that there is "no objection" to these facts. (Document No. 26 at p. 1). Thus, the facts are deemed admitted. Local Rule Cv 56(a)(3).

Plaintiff began working for Wal-Mart as a cashier in 2001. (Administrative Record "AR"[1] at 258).[2] Plaintiff enrolled in the LTD Plan, funded by a Long-term Disability Insurance Policy (the "Policy") issued by Hartford on January 1, 1998. (AR 343).

Under the LTD Policy, the relevant definition of disability provides that Total Disability or Totally Disabled means that:

> (1) during the elimination Period; and (2) for the next 12 months, you are prevented by: (a) accidental bodily injury; (b) sickness; (c) mental illness; (d) substance abuse; or (e) pregnancy, from performing the essential duties of your occupation, and are under the continuous care of a Physician and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.
>
> After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.

(AR 415). The policy further states that "The Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 415). Under the Policy, the claimant bears the burden of providing proof of disability. The Policy states as follows: "Proof of Loss. Written proof of loss must be sent to The Hartford within 90 days after the start of the period for which The Hartford owes payment. The Hartford reserves the right to determine if proof of loss is satisfactory." (AR 430).

On December 10, 2004, Plaintiff submitted a claim for short-term disability benefits to Hartford, supported by an Attending Physician's Statement ("APS") from Michael Staebler, M.D.,

---

[1] The Administrative Record is filed under seal. (Document No. 23).

[2] She was also previously employed as a cashier by Stop & Shop for fifteen years. Id.

Plaintiff's orthopedist. The APS stated that Plaintiff had a "contusion rt knee" and a possible stress fracture. In the Impairment Section he noted "no work for 6 weeks." (AR 341-342). Hartford approved the claim for short-term disability benefits on January 6, 2005. (AR 336). Dr. Staebler subsequently diagnosed avascular necrosis and indicated that Plaintiff had difficulty standing more than thirty minutes. (AR 321). Hartford accordingly extended STD benefits through April 26, 2005. (AR 301). On May 10, 2005, Dr. Staebler stated that "Pt. may work as greeter at Wal-Mart. Cannot lift wt. Needs to be seated." (AR 276). On that same day, Plaintiff's neurologist, Susanne Patrick-MacKinnon, M.D. stated: "I am a neurologist currently following Nahla Ephraim. Please allow Nahla to remain out of work until June 4, 2005." (AR 277). Dr. Patrick-MacKinnon also submitted an APS dated May 10, 2005 listing a primary diagnosis of simply "neck and low back pains." (AR 280-281). With respect to the "impairment" section of the form, rather than specify the extent of limitations as to each category listed, Dr. Patrick-MacKinnon simply stated "limited by neck and low back pain." Id.

On June 1, 2005, Hartford received Plaintiff's claim for LTD benefits. (AR 50, 252-273). When asked to describe her current medical condition, Plaintiff stated "pain on right knee, unable to stand up for short period of time, use cane or crutches to get around." (AR 266). Plaintiff also stated "in addition to the knee pain, have been getting pain in my lower back and neck." Id. Hartford Examiner Kelso Barnett conducted a telephone interview of Plaintiff and gathered her medical records. (AR 49-50).

By letter dated August 25, 2005, Kelso Barnett wrote to Plaintiff and approved her claim for LTD Benefits. (AR 129-130). On August 31, 2005, Roger McNeeley of Hartford conducted a triage

review and noted that Plaintiff's doctor had released her to return to Wal-Mart as a greeter with the use of a stool, but that Wal-Mart did not approve the use of a stool. (AR 37). Mr. McNeeley recommended obtaining physical therapy records and then following up with Dr. Patrick-MacKinnon "if she is showing medical improvement towards weaning from the crutch." Id. On December 6, 2005, Plaintiff informed Hartford that her application for Social Security Disability Insurance Benefits ("SSDI") had been denied. (AR 35, 120-121).

By letter dated February 14, 2006, Mr. Barnett wrote to Dr. Patrick-MacKinnon requesting her opinion as to Plaintiff's current work capacity. (AR 108-109). By facsimile dated February 21, 2006, Dr. Patrick-MacKinnon responded to Mr. Barnett and stated that Plaintiff was capable of performing light and sedentary work for eight hours per day. (AR 104-105). On February 28, 2006, Mr. Barnett noted that he had received Dr. Patrick-MacKinnon's response and had referred the file for an Employability Analysis in anticipation of the upcoming policy change in disability definition from inability to perform "your occupation" to "any occupation." (AR 31-32, 102-103. See also AR 415). On March 7, 2006, Hartford Rehabilitation Case Manager Larry Underwood noted the results of the Employability Analysis. (AR 86-101). In summary, Mr. Underwood stated the following:

> Ms. Nahla Ephraim is a former Cashier who was employed by Wal-Mart. This Employability Analysis is based on the following information located in her LTD file: current residual functional abilities, education, training, employment history, hobbies, interests and special skills as well as the target gainful wage....The results of Ms. Ephraim's Employability Analysis indicate there is a reasonable expectation that she has residual functional abilities to engage in approximately four (4) occupations in the sedentary-to-light work category, as described in the U. S. Department of Labor's <u>Dictionary of Occupational Titles</u>, 1991 edition, based on her current functional

> abilities, education, training, employment history, hobbies, interests and special skills as well as the target gainful wage: Cashier-Checker [D.O.T. #211.462-014]; Cashier II [D.O.T. #211.462-010]; Auction Clerk [D.O.T. #294.567-010] and Marker [D.O.T. #209.587-034]. Based on the National OES Wage Data (2004), the median monthly wage for the occupations selected are $1353.73/month and $1674.40/month. These wages exceed the target gainful wage of $1010.62/month.

Id.

Also, on March 31, 2006, Mr. Barnett noted that he intended to write to Plaintiff's cardiologist, "Dr. Lambrecht to see if he concurs w/ functionality from Dr. MacKinnon based on cardiac standpoint...." (AR 28). On May 15, 2006, Mr. Barnett received a note from Dr. Lambrecht stating that he agreed with Dr. Patrick-MacKinnon with respect to restrictions and limitations from a cardiac standpoint. (AR 27, 72). On May 22, 2006, Kelso Barnett made a recommendation to "terminate claim as of test change, as medical evidence supports that [Plaintiff] is capable of performing full time sedentary light work per physicians-Dr. Patrick-Mackinnon and Dr. Lambrecht. Occupations were identified via an Employability Analysis Report." (AR 26-27). On May 23, 2006, Hartford Examiner Robin Rupert noted that she "agree[d] w/ denial of further bens beyond 6/23/06 as review of meds, responses from providers and EA report would not support TDAO [Total Disability from Any Occupation]." (AR 27).

By letter dated June 3, 2006, Mr. Barnett terminated Plaintiff's LTD Benefits effective June 24, 2006. (AR 67-70). In the denial letter, Mr. Barnett reviewed the medical information provided by Drs. Patrick-Mackinnon, Staebler, and Lambrecht and the Employability Analysis Report. He stated "The documentation contained in your file supports payment of LTD benefits up to 06/23/06 based on your inability to perform the essential functions of your occupation as a Cashier. However,

under the terms of the Policy, the definition of disability changes as of 06/24/06 to include your inability to perform any occupation for which you are qualified." (AR 68). Mr. Barnett stated "In order to determine your current functional capabilities, we wrote to Dr. Patrick[-]Mackinnon on 02/14/06 for his opinion on your present abilities. Specifically, we asked whether or not you retain the capacity to perform either a full-time sedentary or light occupation for at least 6 or 8 hours a day....On 02/21/06, we received a response from Dr. Patrick-Mackinnon opining that you are capable of performing light and sedentary work for 8 hours a day." (AR 68-69).

Mr. Barnett also reviewed the medical information provided by Dr. Lambrecht. He stated "we also wrote to Dr. Lambrecht on 03/03/06 and provided him with a copy of the functionality statement received from Dr. Patrick-Mackinnon and asked whether or not he agreed with Dr. Patrick[-]Mackinnon from a cardiac standpoint. We received a response on 05/05/06 from Dr. Lambrecht noting he agrees with Dr. Patrick-Mackinnon." (AR 69). Lastly, Mr. Barnett reviewed the Employability Analysis. He stated:

> The documentation in your file shows that you are a high school graduate. Additionally, you have previously been employed as a cashier. As such, your file was referred to one of our Rehabilitation Case Managers who conducted an Employability Analysis to determine if there are occupations that you [can] perform within your functional capabilities, experience, and education. The Rehabilitation Case Manager identified the following occupations: (1) Cashier-Checker; (2) Cashier II; (3) Auction Clerk; (4) Marker.

Id. As to disability, Mr. Barnett concluded:

> in view of these findings, we have determined that you are no longer prevented from performing the essential duties of any occupation, as required by the policy definition of Total Disability that applies to your claim. You are not considered Partially Disabled as we have received no documentation of any earnings from the performance of some but not all of the material and substantial duties of your or any

occupation on either a full-time or part-time basis from 12/05/04 through the present. Therefore, no further LTD benefits will be paid to you beyond 06/23/06.

(AR 69-70). Finally, Mr. Barnett informed Plaintiff that:

The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

(AR 70).

By letter dated August 1, 2006, Attorney Joseph P. Casale wrote to Hartford and stated as follows: "Please note that this office, on behalf of Ms. Ephraim claims an Appeal in regards to said decision pursuant to the Employee Retirement Income Security Act of 1974 (ERISA)." (AR 65). He requested "any and all documents used by your agency to disqualify my client from receiving further long term disability benefits." Id. He further stated that "[u]pon receipt of said documents I shall be able to more fully develop the arbitrary and capricious manner in which my client was taken off long term disability." Id. By letter dated August 10, 2006, Hartford's Appeal Unit wrote to Attorney Casale and stated that

[w]e have received your letter indicating that your client is appealing the decision that was made on her claim....Your letter also states that additional information will be submitted in connection with the appeal. Please send that information to the following address:....We will not begin the evaluation of your appeal until the additional

> information is received. If you decide not to submit the information, please notify us and we will begin the evaluation. Please note that your complete appeal must be submitted to us within 180 days of the date of the claim decision. If we do not receive additional information by that time, we will evaluate the appeal using the information currently in the file.

(AR 62). The letter also acknowledged Attorney Casale's request for "copies of documents from the claim file. The request is being forwarded to our Atlanta Claim Office for a response." Id. On August 12, 2006, Mr. Barnett wrote to Attorney Casale and acknowledged receipt of "your request for a copy of the above-referenced claim for Long Term Disability (LTD) benefits. Please find enclosed a copy of the claim file." (AR 25-26, 64).

By letter dated December 8, 2006, Hartford's Appeal Unit wrote to Attorney Casale and stated:

> We will begin the appeal process to your client's claim for Long Term Disability (LTD) benefits. Deanie Wallis, Appeal Specialist, will review the claim file and all documents relevant to it.
>
> Under the federal law known as the Employee Retirement Income Security Act of 1974 (ERISA) we have 45 days to make an appeal decision. If there are special circumstances that prevent us from making the decision in that time a second 45-day decision period can be used. We will make our decision as soon as possible and will notify you if there is a delay that prevents us from completing our evaluation in the first 45 days. We will inform you in the event we are unable to review your appeal for any reason.

(AR 58). On January 3, 2007, Appeal Specialist Deanie Wallis noted that "[t]o date, we have not received any other communication or information from [the attorney or the claimant]." (AR 55). Ms. Wallis also noted that she had reviewed the file and that both Dr. Patrick-MacKinnon and Dr. Lambrecht indicated that Ephraim "could perform sedentary to light work" and that the

Employability Analysis identified "several light and sedentary occupations." (AR 55-56). Accordingly, Ms. Wallis concluded:

> ...We have not received any supplemental information on appeal and both providers noted above supported work capacity at the time of our decision. There is no evidence of disability from performing any occupation and I will uphold the decision to terminate benefits.

(AR 25).

By letter dated January 3, 2007, Ms. Wallis notified Attorney Casale that she had upheld the termination. Ms. Wallis stated:

> We sent you an appeal acknowledgement letter on 08/10/06 and advised you that your complete appeal should be submitted within 180 days of the date of the claim decision. Relevant documents were sent to you on 8/12/06. To date, we have not received any other communication or information from you or Ms. Ephraim. Since the 180 day appeal period expired on 12/3/06, we notified you on 12/08/06 that we would begin the appeal review process.
>
> * * *
>
> We have not received any supplemental information on appeal and both providers noted above supported work capacity at the time of our decision. Accordingly, there is no evidence of Disability from performing any occupation. This is our final determination with respect to the appeal, our record is closed and no further review will be conducted with respect to this matter.
>
> You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to our decision. You have the right to bring a civil action under Section 502(a) of ERISA.

(AR 55-56). More than three (3) years later, on April 26, 2010, Plaintiff filed the current lawsuit.

Hartford takes active steps to promote accurate decision-making. These steps include maintaining a separate appeals unit to independently review denied claims. Affidavit of Bruce Luddy ("Luddy Affidavit") ¶¶ 3-5. These steps also include walling-off claims and appeals

personnel from financial considerations by, <u>inter alia</u>, ensuring that compensation is wholly unrelated to the number of claims paid or denied. Luddy Affidavit at ¶¶ 8-15.

**Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." <u>Nat'l Amusements, Inc. v. Town of Dedham</u>, 43 F.3d 731, 735 (1st Cir. 1995) (<u>citing</u> <u>Anderson v. Liberty Lobby. Inc.</u>, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. <u>Nat'l Amusements</u>, 43 F.3d at 735. Once the movant has made the requisite showing, the non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial." <u>Okpoko v. Heinauer</u>, No. 10-43S, 2011 WL 835598, *15 (D.R.I. March 3, 2011). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

The standard of review utilized by "the district court in [an] ERISA case differs in one important aspect from the review in an ordinary summary judgment case." <u>Orndorf v. Paul Revere Life Ins. Co.</u>, 404 F.3d 510, 517 (1st Cir. 2005). Generally, the Court must draw all reasonable inferences in the light most favorable to the nonmoving party. <u>See</u> <u>Continental Cas. Co. v. Canadian

Universal Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991). "However, in an ERISA benefit-denial context, 'the district court sits more as an appellate tribunal than as a trial court.'" Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 224 (1st Cir. 2010) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002)). "'Summary Judgment is simply a vehicle for deciding the issue,' and consequently, 'the non-moving party is not entitled to the usual inferences in its favor.'" Id. (quoting Orndorf, 404 F.3d at 517).

This standard "does not permit a district court independently to weigh the proof." Leahy, 315 F.3d at 18. Rather, the "district court must ask whether the aggregate evidence, viewed in light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." Id.

**Discussion**

Under ERISA, a plan administrator's denial of benefits is generally reviewed de novo by the Court. Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). When an ERISA plan gives the administrator discretion to determine eligibility for benefits, as in this case,[3] the Court must uphold the decision unless it is "arbitrary, capricious, or an abuse of discretion." Cusson, 592 F.3d at 224 (citing Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004)). Under this standard, the Court reviews whether the benefits decision is "reasoned and supported by substantial evidence." Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45-46 (1st Cir. 2009). "Put differently, [the Court] will uphold [the] decision to deny disability benefits if 'there is any reasonable basis for it.'" Id. (quoting Wallace v. Johnson & Johnson, 585 F.3d 11, 14-15 (1st Cir. 2009)). In this case, both

---

[3] Under the Section "Interpretation of Policy Terms and Conditions," the policy provides that "Hartford has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (AR 415).

-11-

parties apply the "arbitrary and capricious" standard of review in making their respective arguments, and Plaintiff does not argue for application of a heightened "structural conflict of interest" standard of review.  See Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008).

Hartford argues that Plaintiff's appeal fails because she cannot show that its determination was arbitrary and capricious since the decision was based on the undisputed opinions of her own treating doctors.  Alternatively, Hartford argues that Plaintiff's appeal is barred by the policy's three-year contractual limitations provision because the administrative record demonstrates that Plaintiff failed to exercise reasonable diligence in pursuing her rights under ERISA.[4]  Plaintiff contends that Hartford's denial was arbitrary and capricious because it failed to follow its own procedure and failed to produce a full copy of the policy to Plaintiff's counsel upon request.  Finally, Plaintiff argues that Hartford's denial is proven arbitrary and capricious because she was subsequently awarded SSDI by the Social Security Administration.

Plaintiff's procedural arguments fail to carry the day when viewed in the context of (1) the uncontroverted opinions of her own doctors that she could perform sedentary work; and (2) her failure to submit additional medical evidence during the claims appeal process to rebut such opinions.  As is common with LTD benefit policies, the policy at issue contains a two-tiered definition of disability.  For the first twelve months (after a ninety-day waiting or elimination period), the policy defines total disability as the inability to "perform[ ] the essential duties of your occupation."  (AR 415) (emphasis added).  Thereafter, total disability is defined as the inability to

---

[4] The Court has previously ruled in this case that Plaintiff had sufficiently presented a factual issue as to whether Hartford should be estopped from relying upon the policy's three-year limitations period as a claim bar.  (See Document Nos. 15 and 16).  However, even assuming that Hartford is estopped from relying upon the limitations defense, it has conclusively established that its benefits denial is rational and supported by the record.  Thus, there is no need to substantively address the estoppel argument.

-12-

"perform[ ] the essential duties of <u>any occupation</u> for which you are qualified by education, training or experience." Id.

Plaintiff was approved for benefits during the initial twelve-month "your occupation" period based on her claim that impairments of her knee prevented her from performing the essential functions of her position as a cashier. However, her LTD benefits were discontinued effective June 23, 2006 (the end of the "your occupation" period) because Hartford determined that she was "no longer prevented from performing the essential duties of <u>any occupation</u>, as required by the policy definition of Total Disability that applies to [her] claim." (AR 6). (emphasis added).

Hartford's decision was primarily based on medical evidence coming directly from Plaintiff's treating physicians. For instance, on March 3, 2005, Dr. Michael Staebler, an orthopedic surgeon, excused Plaintiff from work for four weeks due to a knee injury and, on May 10, 2005, he released her to work as a greeter at Walmart and indicated that she "cannot lift wt. Needs to be seated." (AR 276, 320). On February 21, 2006, Dr. Susanne Patrick-MacKinnon, a neurologist, opined that Plaintiff was capable of performing light and sedentary work for eight hours per day. (AR 104-105). Finally, on May 15, 2006, Dr. Jon Lambrecht, a cardiologist, agreed, from a "cardiac standpoint," that Plaintiff could perform light and sedentary work. (AR 71-72). Based on this medical evidence, Hartford conducted an "Employability Analysis" (AR 86-101) which determined that Plaintiff was able to perform certain occupations in the "sedentary-to-light work category." (TR 6, 86).

In the denial, Plaintiff was advised of her appeal rights and invited to "submit written comments, documents, records and other information related to [her] claim." (AR 7). On August 1, 2006, Plaintiff's attorney wrote to Hartford to appeal the denial. (AR 65). Receipt of the appeal

was acknowledged by Hartford on August 10, 2006, and Plaintiff's attorney was advised to submit any "additional information" in support of the appeal to Hartford's Appeal Unit. (AR 62). On January 3, 2007, a Hartford Appeal Specialist wrote to Plaintiff's attorney and advised as follows:

> We have not received any supplemental information on appeal and both providers noted above supported work capacity at the time of our decision. Accordingly, there is no evidence of Disability from performing any occupation. This is our final determination with respect to the appeal, our record is closed and no further review will be conducted with respect to this matter.
>
> You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to our decision. You have the right to bring a civil action under Section 502(a) of ERISA.

(AR 55-56). More than three years later, on April 26, 2010, Plaintiff filed this suit under ERISA.

It is undisputed that Plaintiff did not submit any additional medical evidence to Hartford during the appeal period. As previously discussed, Hartford based its denial on reports from Plaintiff's treating doctors. If those reports were inaccurate, outdated, or incomplete, the onus was on Plaintiff to gather and submit additional medical evidence to support her claim. Morales-Alejandro v. Medical Card Sys., Inc., 486 F.3d 693, 700 (1st Cir. 2007) (citing Wright v. R.R. Donnelley & Sons Co. Grp. Benefits, 402 F.3d 67, 77 (1st Cir. 2005)). She did not do so.

Plaintiff argues that Hartford's denial was arbitrary and capricious since it prematurely issued its denial letter on June 3, 2006. (See AR 67). In particular, Plaintiff asserts that Hartford sent a letter to her on January 5, 2006 (AR 116) which gave her "until June 24, 2006 to compile documents but then turned around and sent her a denial letter on June 3, 2006." (Document No. 26 at p.2). Plaintiff mischaracterizes the January 5, 2006 letter. While the June 24, 2006 date is mentioned, it is not identified as a deadline for submitting medical evidence. Rather, Plaintiff is

-14-

informed that the "any occupation" LTD standard is applicable effective June 24, 2006 and that Hartford has commenced an investigation to determine if Plaintiff would still qualify for benefits on or after June 24, 2006. (AR 116). If Hartford had waited until June 23, 2006 to notify Plaintiff of the denial as suggested, Plaintiff would have received absolutely no advance notice of the discontinuance of her benefits.

Even if the Court assumes Hartford acted prematurely, any such error would be harmless. Plaintiff does not argue that she was precluded from submitting medical evidence in support of her claim, she appealed the denial, and it is undisputed that she did not submit any additional medical evidence to Hartford during the appeal process. See DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co., 423 F.3d 6, 16 (1st Cir. 2005) (requiring ERISA claimant to show that procedural error resulted in "prejudice in a relevant sense").

Plaintiff also argues that Hartford's denial was arbitrary and capricious because Hartford did not produce the policy in response to her attorney's request. (Document No. 26 at p. 3). Although this may be relevant to the estoppel issue, it does not support Plaintiff's arbitrary and capricious argument. Again, Hartford's denial was rationally based on reports from Plaintiff's own treating doctors, and she never submitted any additional evidence supporting a finding of disability from performing "any occupation." Plaintiff was advised months in advance of the change from the "your occupation" to "any occupation" standard, specifically advised of the definition of disability contained in the policy, and notified of her right to submit additional information in support of her claim. Plaintiff has not shown how the failure to receive the full policy prejudiced her ability to pursue her claim and thus any such error would be harmless. See DiGregorio, supra.

Finally, Plaintiff contends that Hartford's denial was arbitrary and capricious because she was subsequently awarded SSDI by the Social Security Administration on September 18, 2006. (Document No. 26-1). The LTD policy required Plaintiff to apply for SSDI and allowed for an offset for any such benefits collected. It is apparent that Plaintiff was awarded SSDI on appeal, as she had previously submitted a notice of denial to Hartford on December 6, 2005. (AR 35, 119-121).

"[B]enefits eligibility determinations by the Social Security Administration are not binding on disability insurers." Pari-Fasano v. ITT Hartford Life & Accident Ins. Co., 230 F.3d 415, 420 (1st Cir. 2000). Although such determinations may be relevant to an insurer's decision, they "should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan." Id.

Here, Plaintiff was awarded SSDI by the Social Security Administration on September 18, 2006. (Document No. 26-1). The "Notice of Award" is not part of the Administrative Record, and there is no indication that Plaintiff ever submitted it to Hartford prior to this litigation. Generally, "review for arbitrariness is on the record made before the entity being reviewed" and thus the "Notice of Award" is irrelevant since it was not before Hartford during its decision-making process. See Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 23 (1st Cir. 2003). Also, the "Notice of Award" is a non-substantive notice and does not identify the medical information upon which the decision to award SSDI was made. Plaintiff argues that she was "found disabled [by the Social Security Administration] under the same medical conditions presented to the Hartford." (Document No. 26 at p. 3). (emphasis added). However, there is no evidence before the Court for Plaintiff's conclusion since there is no indication in the record as to the medical conditions and medical

evidence upon which the Social Security Administration based its decision. Hartford's denial was based on evidence from Plaintiff's treating doctors indicating that she was able to perform work at the light to sedentary exertional level. There is absolutely no evidence before the Court (in the administrative record or otherwise) that the Social Security Administration based its decision on this "same" evidence as asserted by Plaintiff. Plaintiff should have brought this "Notice of Award" to Hartford's attention in a timely fashion and provided Hartford with any additional medical evidence which may have been considered by the Social Security Administration. In short, the Social Security "Notice of Award" was not part of the record before Hartford when it made the decision under review, and Plaintiff has not established that such subsequent award renders Hartford's prior denial of LTD to her arbitrary and capricious.

**Conclusion**

For the foregoing reasons, I recommend that Defendant's Motion for Summary Judgment (Document No. 18) be GRANTED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 22, 2011